(153 App. Div. 594.)

## In re SENECA OIL CO.

## GRAHAM et al. v. BAXTER et al.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1912.)

1. CORPORATIONS (§ 629*)—DISSOLUTION—AUTHORITY OF COURT—STATUTORY PROVISIONS.

   While, in a statutory proceeding to dissolve a corporation, the authority of the court is limited to that given by the statute, the court has implied authority to do whatever is necessary to render the statute effective; and where the corporation was solvent, and no creditor objected to a distribution of assets by final order, there was no necessity for a receiver, and the court, under authority of General Corporation Law (Consol. Laws 1909, c. 23) § 191, which provides that in the case of a solvent corporation the court may, in the absence of objection by creditors, dispense with a receiver and provide in the final order for the distribution of the assets, properly determined the relative rights of two sets of stockholders, one of whom claimed a preference in such assets, and entered a final order of distribution.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2478–2481; Dec. Dig. § 629.*]

2. CORPORATIONS (§ 104*)—PREFERRED STOCK—RIGHT TO QUESTION VALIDITY OF CONTRACT.

   Holders of the common stock of a corporation, who, concede that preferred stock was actually issued, cannot question the validity of the agreement which the holders of the common stock actually made upon its issuance.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 454; Dec. Dig. § 104.*]

3. APPEAL AND ERROR (§ 1011*)—REVIEW—QUESTIONS OF FACT.

   A determination of a lower court, on conflicting evidence as to what was the contract between common stockholders of a corporation and those to whom preferred stock was issued, is conclusive on appeal.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 143*)—RIGHTS OF STOCKHOLDERS—ASSIGNEE.

An assignee of common stock of a corporation took it burdened with any equities which existed as to it in the hands of its assignor, and would be bound by an agreement providing for an issue of preferred stock to which the assignor was a party.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 529, 532, 534, 536; Dec. Dig. § 143.*]

5. CORPORATIONS (§ 149*)—CORPORATE STOCK—ISSUE—PRESUMPTION OF CONSIDERATION.

Shares of stock, purchased by the treasurer of the issuing company and then transferred to owners of preferred stock, will be presumed to have been regularly issued and for value, in the absence of a contrary showing.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 539–546; Dec. Dig. § 149.*]

6. CORPORATIONS (§ 610*)—DISSOLUTION—PREFERENCES BETWEEN STOCKHOLDERS—EVIDENCE—VALUE OF PROPERTY TRANSFERRED FOR STOCK.

Where, in a proceeding to dissolve a corporation, in which the court undertook to settle the rights of two sets of stockholders, common and preferred, the latter of whom claimed a right to a preference in the distribution of assets, it was shown that the preferred stockholders had paid almost par for their stock, and that the only consideration which the common stockholders gave was certain oil leases, testimony that the par value of the stock was about 100 times as great as the value of such property was properly admitted, as bearing upon and tending to show what the agreement in regard to a preference was under which the preferred stockholders took their shares.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2424–2430; Dec. Dig. § 610.*]

Appeal from Special Term, Cattaraugus County.

Petition by Archie E. Baxter and others, directors of the Seneca Oil Company, for a voluntary dissolution. From a judgment of dissolution, and an order of reference entered in such proceedings, James G. Graham and others appeal. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, and FOOTE, JJ.

John J. Inman, of Salamanca (James G. Graham, of New York City, on the brief), for appellants.

George W. Cole, of Salamanca, for respondent petitioning directors.

M. B. Jewell, of Olean, for respondent stockholders.

ROBSON, J. This proceeding was begun by the presentation to the Supreme Court of a petition of all the directors of the Seneca Oil Company, a domestic stock corporation, for a voluntary dissolution of the corporation pursuant to the provisions of section 170 of the General Corporation Law (Consol. Laws 1909, c. 23). On the presentation of the petition to the Special Term an order was made appointing a referee and requiring all persons interested in the corporation to show cause before him at a place and time therein fixed why the corporation should not be dissolved. The petition, in addition to the statements required by section 174 of the law to be embodied therein, contained an allegation in substance that a controversy had arisen among the stockholders concerning the distribution

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the assets of the corporation; certain stockholders claiming the right to a preference on such distribution. The order by which the referee was appointed recites the fact of such controversy and directs the referee to—

"hear the allegations and proofs of the parties, and particularly as to the conflicting claims of the stockholders as set forth in said petition and determine the facts, and that said referee make his report in writing and file the same with all convenient speed," etc.

It is this part of that order to which objection is made by appellants as unauthorized. The referee found that certain stockholders are entitled to a preference in the distribution of the assets of the corporation. This finding, confirmed, as modified by the court at Special Term by its final order in said proceedings, and the distribution of the funds directed in accordance with that determination are urged by appellants as the principal reasons why the final order was erroneous.

[1] Assuming that appellants are in a position to urge their objections on this appeal, I think the orders are right. Appellants insist that neither the court, nor the referee, had power in these proceedings to determine the controversy between the stockholders, to which I have referred. The proceeding being purely statutory, of course, the provisions of the statute must be followed; and the authority of the court therein is limited to that given by the statute itself. But the court must have implied authority to do whatever is necessary to render effective the contemplated purpose of the proceedings, which the statute authorizes. No necessity of appointing a receiver appeared, or was claimed to exist; and the corporation was confessedly solvent. Section 191 of the law provides, among other things, as follows:

"But in the case of a solvent corporation, the court may, if there be no objection by creditors, dispense with a receiver and provide in the final order for the distribution of the assets."

No creditor objected to a distribution of the assets by the final order. The court might, therefore, provide by its final order for the distribution of the remaining assets among those entitled thereto. To accomplish this it was necessary to first determine the relative rights of the stockholders as between themselves in the distribution of the corporate assets. So far as the exercise of that implied power is necessary to ascertain who are rightfully entitled to share in the distribution, which the court is specifically empowered to direct, and the share to which each is entitled, it must necessarily be given to the court, else the court could not direct any proper distribution of the assets. Of course, this implied power extends only so far as the necessities of the case require in order to make a just and equitable distribution; and the jurisdiction of the court cannot be extended by implication to include a matter not directly involved in the authorized proceeding, as was held in Matter of Binghamton General Electric Co., 143 N. Y. 261, 38 N. E. 297.

[2] The court, having the power to determine by its final order in this proceeding how and to whom the assets of the corporation should be distributed, the next inquiry is: Was the determination

it made correct? Here it is important, in the first place, to note that appellants' counsel concedes that, in addition to the common stock, there was an issue and sale of preferred stock to the extent determined by the final order, which stock is now held by the persons named therein as the owners thereof. It is also conceded that the holders of the common stock are estopped from questioning the legality of the issue of preferred stock as actually made. This is conceded, though it clearly appears that the provisions of the statute prescribing how preferred stock may be issued were not in this instance complied with. That the stock was issued as preferred stock being conceded, the sole controverted issue remains: To what extent was it agreed by the holders of the common stock that that preference should be given to the preferred stock? If the holders of the common stock are estopped from questioning the legality of the preferred stock as issued, then certainly upon the same principle they are estopped from questioning the validity of the agreement which the holders of the common stock actually made; and the inquiry reverts to the determination of what that agreement actually was, because this agreement is the ground upon which estoppel can in either event be predicated.

[3] It is sufficient for the present purpose to say that the court has determined upon conflicting evidence that the preferred stock certificates, providing for a preference only as to the dividends at the rate of 12 per cent. per annum, did not express the agreement pursuant to which the issue of preferred stock was made, and that the actual agreement was that a preference should be given to this stock, not only as to the dividends, but also on the distribution of assets.

[4] It is claim that appellant Mitchell, who is now the owner by assignment of the common stock originally issued to Wilbur, is not bound by the agreement made by Wilbur, as to the preferred stock, as Wilbur would have been, if he still held this stock. Wilbur was a party to the agreement providing for the issue of preferred stock. Mitchell, to whom the stock was assigned, took it burdened with any equities in relation to the stock which existed as to it in the hands of his assignor. Kent v. Quicksilver Mining Co., 78 N. Y. 159, 188.

[5] It is also urged that the Bushnell common-stock, which appears to have been purchased by the treasurer of the company for the company and then transferred to such holders of preferred stock as had no common stock, was improperly issued to such holders, and should in fact be deemed to be stock owned by the company, and therefore not entitled to share in the distribution of assets. It is sufficient to say upon this point that the evidence as to the purchase of this stock for the company and its subsequent issue to the various preferred stockholders is so meager that the court was warranted in refusing the request to find that was issued without consideration. True, what the consideration was does not appear. On the other hand, it is not shown that it was issued without consideration. Until that fact is made to appear, it must be presumed

that it was regularly issued and for value. Kent v. Quicksilver Mining Co., supra, 78 N. Y. 183.

The objection now made to the allowance of the claim of Hamilton for the sum of $250 money loaned by him to the corporation May 20, 1905, together with interest thereon to the date of the report, upon the ground that this claim was barred by the statute of limitations, seems to be without merit.

[6] Of the many exceptions to the admission of evidence, reference is especially made to one as presenting error, requiring a reversal of the order. The original agreement under which the common stock was issued provided that it should be issued to the parties to the agreement in certain agreed proportions according to their several interests in certain Indiana oil leases, which were to be transferred by these parties to the company, and they were to receive this common stock in payment therefor. The face value of stock so issued was $100,000. This was all the common stock ever issued, and practically all the corporation received for the stock was these leases. A witness was asked what these leases cost these promoters. This was objected to, overruled, and exception taken. The answer was $1,100. In the first place, even if this evidence was incompetent or immaterial, I do not think its reception would be error so prejudicial as to require a reversal of the order for that reason alone. I do think, however, it was entirely competent. Every purchaser of a share of preferred stock paid $80 for a $100 share. The recipients of the common stock turned in these oil leases and received common stock in return at the rate of about $1 per $100 share. The sale of the preferred stock was the only method, except by borrowing it, by which the company obtained real money to develop these leases. What the leases represented in money value was competent, as bearing upon the probabilities as to which version of the agreement made by holders of the common stock, as to the extent of preference to be given the preferred stock, was the true one.

The other exceptions are unimportant, if the court had power to pass upon the rights of the different classes of stockholders in making a distribution of assets.

The orders, so far as appealed from, should be affirmed, with costs. All concur.